**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DANIEL L. BARGER,**

    **Plaintiff,**

**v.**                                                    **Case No.  8:05-cv-1245-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/


**O R D E R**

        The Plaintiff seeks judicial review of the denial of his claim for Social Security

disability benefits.  For the reasons set out herein, the decision is affirmed.


I.

        Plaintiff was 50 years of age at the time of his second administrative hearing.

Plaintiff has a tenth grade education with a GED and he served for three years in the Marine

Corps.  His past relevant work was as a mechanic and truck driver.  Plaintiff applied for

disability benefits in 1998, alleging disability as a April 2, 1997, by reason of pain and atrophy

of the right biceps and triceps, surgery with fusion of the cervical spine, and pain in the lower

back.  The Plaintiff's application was denied originally, on reconsideration, and after an

administrative hearing before an Administrative Law Judge (hereinafter "ALJ") in April 2000.

By that decision, the ALJ determined that while the Plaintiff suffered severe impairments

related to spondylosis with right arm atrophy and limited neck movement, he had the residual

functional capacity (hereinafter "RFC") for a reduced range of light exertional work and therefore was not disabled.  See (R. 371-76).  In April 2001, the Appeals Council vacated the decision and remanded it to the ALJ for a new hearing to develop and update the medical evidence from treating sources following the Plaintiff's most recent surgery, obtain evidence from a medical expert and a vocational expert, evaluate the Plaintiff's subjective complaints, and revisit the Plaintiff's residual functional capacity in light of the expanded record.  See (R. 381- 82).

The hearing on remand was conducted November 8, 2002.  Plaintiff was represented by an attorney and testified that he could no longer work at any job after he sustained neck and right arm injuries in an on-the-job accident on April 2, 1997.[1]  By his testimony, the problems associated with his injuries, the medication he takes for pain, and his need to lie down during the day would prevent him from holding down any fulltime job.  Plaintiff indicated that he underwent surgery within a year or two of his accident in which a plate was implanted in his neck.  Plaintiff testified that he also had  prior neck surgery after an accident where a tractor-trailer ran a red light.  He complains of severe atrophy and loss of muscle mass in his right arm.  Additionally Plaintiff testified that he is starting to lose muscle mass in his left leg.  He receives all of his medical treatment, including pain management, from the Veterans Administration.

Plaintiff's estimated that he could stand for about fifteen to twenty minutes without having to sit down, and he could sit for about same length of time without having to stand.

---

[1]Plaintiff indicated that he was receiving workers compensation benefits until about a year prior to the hearing, and he settled the case for about $34,000.

He further estimated that he could alternate between sitting and standing for about three or four hours maximum before having to lie down for a couple of hours.  Plaintiff takes medication for his pain and while it helps, it makes him sleepy.  Plaintiff testified that, during an eight-hour day, he would need three or four breaks lasting about an hour each, during which he would lie down.  He is unable to lift even ten pounds with his right arm, and he has to hold his right arm to shave or brush his teeth.  He can write with his right hand if he's sitting at a table.  He can lift about twenty pounds with his left arm and hand.  Plaintiff stated that his neck hurts when he lifts more than twenty pounds, and he otherwise experiences pain and jerking in his arm.

Plaintiff testified that his condition has worsened since 1997.  In particular, he testified that he has lost and continues to lose muscle mass in his right dominant arm.  During an average day, Plaintiff stays at home and sits.  In particular, Plaintiff testified that he must rest four or five hours during the day, which includes three or four hours of sleeping.  Plaintiff takes sleeping pills at night, and he sleeps for about six hours at night.  Plaintiff lives alone in a one-bedroom apartment.  He eats canned or microwaved foods.  He is unable to wash the dishes or clean the house; his sister does this for him.  Plaintiff has a driver's license and drives a pickup truck with an automatic transmission.  Plaintiff estimated that he drives 400 miles a month to and from the VA for medical treatment and the store.  See Plaintiff's testimony (R. 43-56).

The ALJ also took testimony from Richard Gardner, a medical expert (hereinafter "ME"), who reviewed the Plaintiff's medical history and listened to his testimony.  Dr. Gardner acknowledged that Plaintiff has impairments to his cervical spine, but he opined that

3

the surgery was performed skillfully with no complications and that Plaintiff's condition was stable.  Dr. Gardner further opined that Plaintiff's medical records do not support a listing level impairment and that Plaintiff could perform light work, particularly if Plaintiff's condition continued to be stabilized with physical therapy and medication.  In Dr. Gardner's view, Plaintiff's problems are mainly subjective.  He indicated that the Plaintiff had mild changes without severe neurological or focal defect.  He estimated that Plaintiff could lift about 20 pounds in both arms, could sit for six hours in an eight hour day, and could stand to and walk for about three to four hours in an eight hour day, but should avoid vibrations, balancing, stooping, and crawling.

On cross examination, Dr. Gardner acknowledged wasting of Plaintiff's right shoulder and arm muscles but he opined that the condition had occurred over a long time as a result of non-use.  Dr. Gardner also acknowledged that Plaintiff had undergone surgery in his neck, but he reiterated that Plaintiff's neurological condition is stable with no myelopathy or spinal cord involvement.  Dr. Gardner further testified that Plaintiff's pain medication was to be taken on an as needed basis, and he noted that newer pain medications are not addictive and have no other side effects.  See (R. 56-63).

ALJ also took testimony from William Harvey, a vocational expert (hereinafter "VE").  Assuming an individual with a residual functional capacity for a restricted range of light work activity, maximum occasional lifting of twenty pounds, frequent lifting of less than twenty pounds, and avoidance of vibrations, repetitive bending, stooping, crawling, twisting, or working at heights, the VE opined that Plaintiff could not return to any of his past work.  However, the VE opined that with his acquired skills, Plaintiff could perform work such as

4

chauffeur, rental car deliverer or rental car driver, or bench mechanic, jobs which occur in significant numbers nationally and locally.  Upon further restrictions related to the non-use of the dominant right hand and arm, as well as the avoidance of rapid neck movements, the VE opined that Plaintiff could not perform the jobs of chauffeur or rental car driver, but he could still perform the bench mechanic position.  The VE further opined that even with these limitations and without regard to the transferability of acquired skills, Plaintiff could perform light and unskilled work such as cashier, produce inspector, and arcade attendant, jobs which also occur in significant numbers nationally and locally.  Upon the further assumption that Plaintiff would require two hours each day in addition to scheduled breaks, Plaintiff would be eliminated from all competitive employment.  <u>See</u> (R. 64-68).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of December 19, 2002, the ALJ determined that Plaintiff has severe impairments related to a history of cervical disc disease requiring discectomy and resulting in atrophy of the right arm and frozen right shoulder, and alcohol abuse.  For the period between October 22, 1998, and November 30, 1999, the ALJ concluded that he had the RFC for significantly less than sedentary work and was thus disabled.  However, for the period prior to October 22, 1998, and after November 30, 1999, the ALJ concluded that Plaintiff had the RFC for a restricted range of light work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff was not disabled during these periods.  (R. 20-28).  The Appeals

Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

6

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two general claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in finding the Plaintiff not disabled between April 2, 1997, and through October 21, 1998, and December 1, 1999, to the date of the ALJ's decision; and

(2) The Commissioner erred in failing to encompass all of Plaintiff's limitatiions (sic) in his hypothetical question to the vocational expert and therefore the ALJ's reliance on the vocational expert's answer was error.

By his first claim, Plaintiff asserts that the ALJ should have determined that he was disabled prior to October 1998 on the basis of the medical records of his treating doctor, Donald L. Mellman, M.D., and in light of the conclusion by Dr. Hector Rivera, M.D., who opined that Plaintiff could not work (R. 302).[2]  In support, Plaintiff rather vaguely argues that the record reflects that no changes occurred in his condition after his care was turned over to Dr. Rivera but there were additional findings to support his complaints.  Thus, Plaintiff urges the ALJ should have considered whether his condition had deteriorated or whether additional testing demonstrated that his condition was more severe than originally thought.

In response, the Commissioner maintains that the ALJ's conclusions are supported by the medical record.  Thus, as the ALJ determined, for the period prior to October 1998, Dr. Mellman's records reflect only conservative treatment and no finding of disability.  Consistent with Dr. Rivera's opinion in his November 1998 note, the ALJ found Plaintiff disabled after October 22, 1998.  Based on the ALJ's review of the record thereafter, the period of disability lasted until November 30, 1999.  Then, medical records documented an improved condition. Thus, the reports of Dr. Gregory T. Flynn, M.D., and a November 1999 Functional Capacity

---

[2]Dr. Mellman treated the Plaintiff after his April 1997 accident until about October 21, 1998, when he ceased his care due to a dispute with the workers compensation carrier.  (R. 251-302).  Plaintiff was referred to Dr. Rivera for medications.  On a form dated November 2, 1998, Dr. Rivera opined that the Plaintiff was unable to work since October 22, 1998, the date he first saw Plaintiff.

8

Evaluation from HealthSouth indicated Plaintiff could return to a limited range of light work.[3] The Commissioner further urges that the ALJ's conclusion for the latter period of time is also supported by Dr. Gardner, who also opined that Plaintiff was not disabled from all work.

Initially, I find no merit, under the applicable standard of review, to Plaintiff's claim of disability for the period after November 30, 1999.  The medical record provides substantial support for the ALJ's conclusion in this regard and Plaintiff makes no showing otherwise.  As for the period prior to October 22, 1998, the matter is more problematic.  While Dr. Mellman's records do not indicate a finding of disability, there is no question that he found Plaintiff to be suffering from significant medical conditions and he was particularly concerned with the atrophy in Plaintiff's right upper extremity.  It does not appear that Dr. Rivera had any additional significant medical evidence, not before Dr. Mellman, which suggested a sudden downturn in the Plaintiff's condition after he took over the Plaintiff's care.  Instead, it appears that Dr. Rivera simply dated his opinion on disability to the date Plaintiff first came under his care, and arguably on this record an earlier onset date might have been identified. However, Plaintiff does not make such a showing on this appeal and upon a consideration of the whole medical record from this period, I cannot find grounds to order either a reversal or a remand.

_____

[3] Dr. Flynn advised that Plaintiff was at MMI as of October 4, 1999, and should return to work under restrictions set by Dr. Kenneth M. Louis, M.D.  (R. 560-61).  Additionally, the ALJ possessed a November 1999 Functional Capacity Evaluation from Health South which indicated Plaintiff had the capacity to perform the exertional requirements of light work.

Initially, the ALJ was correct that Dr. Mellman's records do not contain any

disability opinions[4] or suggest functional limitations indicating disability as of an earlier time.

Further, while the objective evidence during this period of time revealed significant findings

in the area of Plaintiff's cervical spine, when the record as a whole is considered, a

conclusion that Plaintiff could work during this period of time is arguably supported by

substantial evidence.  Thus, none of the other doctors or chiropractors who examined or

treated Plaintiff during this period opined that Plaintiff was disabled or otherwise imposed

limitations rendering him disabled from all work.  On the contrary, in a December 1, 1997

note (R. 230), Dr. Jairo Parada, M.D., indicated that he had summarized the results of a

functional capacity evaluation ordered by Dr. Mellman (R. 280) and advised Plaintiff he could

return to work full time in a light duty capacity subject to restrictions set forth in the

assessment.  (R. 227, 414-26).[5]  This conclusion is no doubt supported in part by the fact that

some of the diagnostic work-up ordered or reviewed by Dr. Parada revealed normal findings.

See (R. 227-44).  While Dr. Mellman's notes reflect concern over the atrophy in Plaintiff's

right shoulder and arm, they also reflect that this condition may have originated in the earlier

----

[4]In notes from June and July 1997, Dr. Mellman said Plaintiff could not work in his
current condition.  But in a September 1997 note, Mellman indicated he would order a
functional capacity assessment and either return him to work or declare him permanently and
totally disabled if he could not do any kind of work.  (R. 280).  As discussed above, the
functional capacity evaluation did not direct a conclusion that Plaintiff was incapable of all
work.

[5]By that assessment, Plaintiff could lift 31 pounds from floor to knuckle, lift 20
pounds from knuckle to shoulder height, was unable to fully squat, needed to be able to
change positions from sitting to standing frequently, and could only repetitively bend with
support on an occasional basis.  (R. 415).

10

accident (from which he recovered and returned to work) and that the muscle strength in the upper extremities was nonetheless good.  <u>See</u> (R. 259, 293).

While I might agree with the Plaintiff that his disabling condition did not occur overnight, I am constrained to conclude that in light of the record in its entirety, the ALJ was not required to find the Plaintiff disabled as of some earlier time before October 22, 1998. The conclusion by the ALJ in this regard is supported by substantial evidence.

Regarding his second claim, Plaintiff argues that the hypothetical questions posed to the VE were not precise enough to encompass all his impairments and answers given to the hypotheticals were thus inadequate to support the ALJ's conclusions.  More particularly, he complains that the ALJ found he could not use his right arm or hand and that the capacity to lift was limited to his left arm.  Yet, the VE testified (and the ALJ accepted) that even with these limitations, the Plaintiff could perform the work of cashier, produce inspector and arcade attendant with just one arm.  Plaintiff suggests that the inability to use the right upper extremity at all could prove to have greater limitations than the VE would have surmised from the hypothetical question and therefore, a remand for further inquiry of the VE is necessary.

In response, the Commissioner urges that the VE's testimony provides substantial evidence to support the ALJ's decision regarding disability.  The Commissioner notes that the ALJ's decision prohibited Plaintiff from using his right arm and that consistent with that limitation, the ALJ proffered to the VE a limitation for no lifting with the right dominant arm or hand.  In addition to the inquiry by the ALJ, Plaintiff's counsel also questioned the VE and inquired if one could perform the jobs of cashier, produce inspector, or arcade attendant, with

only one arm.  The VE responded affirmatively.  Thus, when the entirety of the VE's

testimony is considered, there simply is no error requiring a remand.  .

     The Plaintiff is correct that case law in this circuit requires that the ALJ employ

hypothetical questions which are accurate and supportable on the record and which include all

limitations or restrictions of the particular claimant.  <u>Pendley v. Heckler</u>, 767 F.2d 1561 (11th

Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully

assume all of a claimant's limitations, the decision of the ALJ, based significantly on the

expert testimony, is unsupported by substantial evidence.  <u>Id.</u> at 1562 (quoting <u>Brenem v.

Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980)).  However, a fair reading of the record in this case

reveals that the Plaintiff's limitations in using his right arm and hand were properly accounted

for and that the testimony of the VE is adequate to support the decision.

     Here, the decision reflects a conclusion that Plaintiff "cannot use his right arm or

hand:  therefore his capacity to lift and carry is limited to the left upper extremity."  (R. 26).

In questioning the Plaintiff, the ALJ assumed hypothetically that Plaintiff was limited to jobs

requiring "you to lift no weight with your right arm or your right hand and occasionally 20

pounds with your left hand and . . ."  (R. 52, ).  In questioning the VE, the ALJ referenced and

incorporated that assumption noting that "and that hypothetical included further restrictions

relating to the nonuse of the right dominant hand and arm --."  (R. 66).[6]  Under this

hypothetical, the VE testified that Plaintiff could perform work as a cashier, produce inspector

---

    [6]By my reading, the ALJ intended the hypothetical to assume that Plaintiff could not use his right arm and hand for any purpose.  However, even if Plaintiff's reading is correct and there is a slight variance between the decision and the ALJ's hypothetical, there is no error requiring a remand in light of his counsel's inquiry of the VE.

and arcade attendant.  (R. 67).  Furthermore, the witness noted that his testimony was consistent with the DOT.[7]  On cross-examination by Plaintiff's counsel, the witness affirmed that while all the jobs required frequent reaching forward, Plaintiff could still meet the requirements for such work even if he could use just one arm.  (R. 68).  The confusion now surmised by Plaintiff's counsel is not apparent upon a fair reading of the VE's testimony.  I find the VE's testimony supports the ALJ's decision and Plaintiff is not entitled to a remand on this basis.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 26th day of September 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[7]To the extent that the Plaintiff raises some issue about the DOT, it is worth noting that he had a full and fair opportunity to explore this with the VE at the hearing, and to the extent that he failed to inquire as fully as he might have, he has only himself to blame.